Hemingway Group LLC v i80 Group LLC (2023 NY Slip Op 06229)

Hemingway Group LLC v i80 Group LLC

2023 NY Slip Op 06229

Decided on December 05, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 05, 2023

Before: Kern, J.P., Gesmer, Moulton, Kennedy, Higgitt, JJ. 

Index No. 656856/22 Appeal No. 1146-1147 Case No. 2022-05631, 2023-02302 

[*1]Hemingway Group LLC, Plaintiff-Respondent/Appellant,
v
i80 Group LLC et al., Defendants-Appellants/Respondents.

Sidley Austin LLP, New York (James Heyworth of counsel), and (Steven E. Sexton of the bar of the State of Illinois, admitted pro hac vice of counsel) and Cauley Law Group, Hinsdale, IL (Thomas K. Cauley, Jr. of counsel) for appellants/respondents.
Kasowitz Benson Torres LLP, New York (Michael A. Hanin of counsel), for respondent/appellant.

Order, Supreme Court, New York County (Jennifer G. Schecter, J.), entered on or about November 14, 2022, which, to the extent appealed from as limited by the briefs, denied defendants' motion to dismiss parts of the first and second causes of action of the original complaint pursuant to CPLR 3211 (a) (1) and (7), unanimously modified, on the law, to dismiss so much of the first and second causes of action as alleges that defendant i80 Group Specialty Finance GP LLC, f/k/a i80 Group Lending Opportunities GP LLC (the GP) breached its amended and restated limited liability company agreement and the implied covenant of good faith and fair dealing by not paying plaintiff its revenue share from funds other than nonparty i80 Group Specialty Finance LP, f/k/a i80 Group Lending Opportunities LP (the Fund), and otherwise affirmed, without costs.
Order, same court and Justice, entered on or about April 27, 2023, which, to the extent appealed from as limited by the briefs, granted defendants' motion to dismiss the third cause of action of the amended complaint with prejudice pursuant to CPLR 3211 (a) (3) and (7), unanimously modified, on the law, to reinstate that cause of action except for subparagraphs 76 (a), (d) and (f), and otherwise affirmed, without costs.
On June 23, 2017, plaintiff purchased Class B shares in Legacy i80, which made plaintiff a member of two LLCs; the GP, which is the Fund's general partner, and i80 Group LLC (i80 Group), which is the Fund's manager. The Fund was originally named i80 Group Lending Opportunities LP and was later twice renamed as i80 Group Specialty Finance LP and i80 Group Specialty Finance 2019 LP. In connection with its purchase, plaintiff signed the Limited Liability Company Agreements of i80 Group (the 2017 i80 LLC Agreement) and i80 Group Lending Opportunities GP (the 2017 GP LLC Agreement). Both LLC Agreements are governed by Delaware law.
The 2017 i80 LLC Agreement states, "Management Fees received by the Company shall be allocated to the Members pro rata based on such Members' respective Percentage Interests." In turn, "Management Fees" are defined as "all of the income of any nature received by the Company in connection with its providing investment management or investment advisory services." By contrast, the 2017 GP LLC Agreement specifically limits proceeds to income derived from the Fund.
In June 2019, plaintiff paid $500,000 for additional Class B interests in i80 Group and the GP. As part of its 2019 purchase, plaintiff signed the Amended and Restated LLC Agreements of i80 Group (the 2019 i80 LLC Agreement) and the GP (the 2019 GP LLC Agreement). Like the 2017 i80 LLC Agreement, the 2019 i80 LLC Agreement allocates "Management Fees," which are defined as "all fees received by the Company [i.e., i80 Group] in connection with its providing investment management or investment advisory services." Like the 2017 GP LLC Agreement, the 2019 GP LLC Agreement specifically limits proceeds to income derived from [*2]the Fund.
In 2021, i80 Group secured a $450 million investment from nonparty ICONIQ Capital. Thereafter, defendant Marc Helwani, i80 Group's founder, notified plaintiff that to close the ICONIQ deal, i80 Group had to restructure its legal entities. He proposed replacing i80 Group with defendant i80 Group AB LLC and the GP with defendant i80 Group AB GP LLC.
The terms of the Amended and Restated LLC Agreement for i80 Group AB (the i80 AB LLC Agreement) significantly differed from the terms of the 2019 i80 LLC Agreement. While the 2019 i80 LLC Agreement allocated "all fees received by [i80 Group] in connection with its providing investment management or investment advisory services," the i80 AB LLC Agreement allocated only "2019 Fund Management Fees", which were the fees i80 Group AB would receive "in connection with its providing investment management or investment advisory services to" a specific fund, namely i80 Group Specialty Finance 2019 LP. The terms of the Amended and Restated LLC Agreement for i80 Group AB GP are consistent with the terms of the 2019 GP LLC Agreement as they limit proceeds to income derived from a specific fund.
After plaintiff's representative asked the Chief Operating Officer of i80 Group a question about the restructuring, on November 23, 2021, Helwani rescinded his offer to plaintiff to become a member of the restructured entities. In May 2022, Helwani purported to terminate plaintiff's membership interests in i80 Group on the grounds that plaintiff had disparaged i80 Group, the GP and Helwani to other Class B Members and had threatened to publicly defame the Companies.
On August 1, 2022, plaintiff commenced the instant action, asserting causes of action for breach of the 2019 i80 LLC Agreement and the 2019 GP LLC Agreement, breach of both LLC Agreements' implied covenants of good faith and fair dealing and breach of fiduciary duty.
The motion court properly denied defendants' motion to dismiss so much of the first cause of action as alleges that i80 Group breached the 2019 i80 LLC Agreement by not paying plaintiff its bargained-for revenue share when i80 Group provided investment management or advisory services to funds other than the Fund. The 2019 i80 LLC agreement unambiguously states that i80 Group's members are entitled to their pro rata share of the income or fees it receives "in connection with its providing investment management or investment advisory services." Therefore, plaintiff sufficiently states a claim for breach of the 2019 i80 LLC Agreement on the ground that it would have been entitled to its pro rata share if defendants had not terminated its membership in i80 Group.
However, the motion court should have dismissed, based on documentary evidence, so much of the first cause of action as alleges that the GP breached the 2019 GP LLC Agreement by not paying plaintiff its bargained-for revenue share from funds other than the Fund. In contrast to the 2019 i80 LLC Agreement, the 2019 GP LLC Agreement [*3]unambiguously states that its members are only entitled to income from a specific fund, namely, the Fund.
Plaintiff may not rely on extrinsic evidence, such as term sheets, frequently asked questions, and emails to sustain its breach of contract claim as against the GP as such evidence may not be considered where the agreement is unambiguous. Even though the contracts whereby plaintiff purchased its interests in the GP gives it the right to ask the managers questions, it also states that plaintiff is buying interests in the GP based solely on the purchase agreements and LLC agreements.
The motion court properly denied defendants' motion to dismiss so much of the second cause of action that alleges that i80 Group breached the implied covenant of good faith and fair dealing in the 2019 i80 LLC Agreement. "[A] party may only invoke . . . [the covenant of good faith and fair dealing] when it is clear from the underlying contract that the contracting parties would have agreed to proscribe the act later complained of had they thought to negotiate with respect to that matter" (Winshall v Viacom Intl., Inc., 76 A3d 808, 816 [Del 2013] [ellipsis and internal quotation marks omitted]). "The implied covenant operates to prevent a party from acting unreasonably to deprive the other party from receiving the fruits of its bargain" (DG BF, LLC v Ray, 2021 Del Ch LEXIS 37, *40, 2021 WL 776742, *17 [March 1, 2021, C.A. No. 2020-0459-MTZ]). Here, the complaint sufficiently asserts that i80 Group breached the implied covenant of good faith and fair dealing in the 2019 i80 LLC Agreement. Specifically, plaintiff asserts that defendants deprived it of the fruits of its bargain by terminating its membership interests in the i80 Group without reasonable justification shortly after i80 Group received the large investment from nonparty ICONIQ Capital and then managed the investment through entities other than the Fund.
However, the motion court should have dismissed so much of the second cause of action that alleges that the GP breached the implied covenant of good faith and fair dealing in the 2019 GP LLC Agreement. Plaintiff has not sufficiently stated that it has been utterly deprived of the fruits of its bargain with respect to the more limited 2019 GP LLC Agreement. "The implied covenant of good faith and fair dealing cannot properly be applied to give the plaintiff[] contractual protections that [it] failed to secure for [itself] at the bargaining table" (Winshall, 76 A3d at 816 [internal quotation marks omitted]). The 2019 GP LLC Agreement does not provide for any bargained-for revenue share from funds other than the Fund.
Only a portion of the third cause of action, which asserts a direct claim for breach of fiduciary duty, should have been dismissed on the ground that it was derivative. The issue of "whether a stockholder's claim is derivative or direct . . . must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the [*4]suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" (Tooley v Donaldson, Lufkin & Jenrette, Inc., 845 A2d 1031, 1033 [Del 2004]). In the LLC context, "[a] claim is derivative where the nature of the alleged injury is such that it falls directly on the LLC as a whole and only secondarily on an individual member as a function of and in proportion to [their] pro rata investment in the LLC" (Deane v Maginn, 2022 Del Ch LEXIS 315, *27, 2022 WL 16557974, *12 [Nov. 1, 2022, C.A. No. 2017-0346-LWW] [internal quotation marks omitted]).
The portion of the third cause of action which asserted that Helwani "divert[ed plaintiff]'s interest in i80 Group management fees and [GP] incentive revenue to himself and, upon information and belief, to ICONIQ" should have been dismissed on the ground that it was a derivative rather than a direct claim because plaintiff was injured "as a function of and in proportion to [its] pro rata investment in" i80 Group and the GP (Deane, 2022 Del Ch LEXIS 315 at *27, 2022 WL 16557974 at *12 [internal quotation marks omitted]). "A claim that a director or officer improperly usurped a corporate opportunity . . . is a derivative claim" (id., 2022 Del Ch LEXIS 315 at *25, 2022 WL 16557974 at *11 [internal quotation marks omitted]).
Plaintiff's reliance on Beatrice Invs., LLC v 511 9th LLC (177 AD3d 551 [1st Dept 2019]) is misplaced as the amended complaint in the case at bar does not allege that Helwani diluted plaintiff's interest to weaken its voting rights. Plaintiff may not merely allege in conclusory terms that it was diluted; claims for breach of fiduciary duty must be pled with particularity (see CPLR 3016 [b]). Unlike in Beatrice, here, there is no indication that either i80 or the GP issued (1) any additional membership interests, which would have diluted plaintiff's 2.25% interest in those entities, or (2) preferred equity, which would have come before plaintiff's right to distributions (cf. Beatrice Invs., LLC v 940 Realty LLC, 2018 NY Slip Op 31008[U], *2, 10-12 [Sup Ct, NY County], affd 177 AD3d 551 [1st Dept 2019]).
However, the remaining portions of the third cause of action assert direct claims for breach of fiduciary duty because plaintiff, individually, suffered the harm (see Tooley, 845 A2d at 1033; see also Brinckerhoff v JAC Holding Corp., 10 AD3d 520, 521 [1st Dept 2004] [finding, under Delaware law, that plaintiffs had a "direct claim based upon the discriminatory denial of the benefit of an investment transaction received by other . . . shareholders but not by plaintiffs"]).
The motion court should only have dismissed one of the direct claims on the ground that it was duplicative of the breach of contract claim. "[W]here a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim. In that specific context, any fiduciary claims [*5]arising out of the same facts . . . would be foreclosed as superfluous" (BÃcker v Palisades Growth Capital II, L.P., 246 A3d 81, 109 n 204 [Del 2021] [internal quotation marks omitted]). "If the obligation to be enforced arises from a fiduciary duty owed to the shareholders, then the count is not duplicative and will not be dismissed" (Grayson v Imagination Station, Inc., 2010 Del Ch LEXIS 169, *22, 2010 WL 3221951, *7 [Aug. 16, 2010, Civil Action No. 5051-CC]; see also PT China LLC v PT Korea LLC, 2010 Del Ch LEXIS 38, *27, 2010 WL 761145, *7 [Feb. 26, 2010, C.A. No. 4456-VCN]).
The only portion of the third cause of action which should have been dismissed on the ground that it was duplicative is the allegation that Helwani "attempt[ed] to force [plaintiff]'s withdrawal from i80 [Group] and the . . . GP in bad faith." That allegation is duplicative of plaintiff's claim for breach of contract in which plaintiff alleges that Helwani breached section 3.8 of the Amended and Restated LLC Agreements for i80 Group and the GP by "terminat[ing plaintiff]'s membership interests [in] bad faith." As to the remaining direct claims in the third cause of action, there is an independent, noncontractual basis for those. "A fiduciary may not play 'hardball' with those to whom he owes fiduciary duties, and [Delaware] law provides recourse against disloyal fiduciaries or controllers who use their power to coerce the minority into economic submission" (Auriga Capital Corp. v Gatz Props., LLC, 40 A3d 839, 870 [Del Ch 2012], affd 59 A3d 1206 [Del 2012]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 5, 2023